UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINA IRIS VIKTOR, a/k/a NATASHA ELENA COOPER,<br><br>*Plaintiff*,<br><br>-against-<br><br>KENDRICK LAMAR, a/k/a KENDRICK LAMAR DUCKWORTH; SOLANA IMANI ROWE, a/k/a SZA; TOP DAWG ENTERTAINMENT LLC, a division of UNIVERSAL MUSIC GROUP RECORDINGS, INC. a/k/a UMG RECORDINGS, INC.; INTERSCOPE RECORDS, a subsidiary of UNIVERSAL MUSIC GROUP RECORDINGS, INC. a/k/a UMG RECORDINGS, INC.; RADICALMEDIA LLC; DAVE MEYERS; DAVE FREE; FREENJOY, INC.; BUF, INC.; and JOHN DOES 1-8.<br><br>*Defendants*. | 18-CV-____1554____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Lina Iris Viktor a/k/a Natasha Elena Cooper ("Plaintiff" or the "Artist"), by her attorneys, Cahill Cossu Noh & Robinson LLP, as and for her Complaint against Defendants Kendrick Lamar a/k/a Kendrick Lamar Duckworth ("Lamar"), Solana Imani Rowe a/k/a SZA ("SZA"), Top Dawg Entertainment LLC ("TDE"), Universal Music Group Recordings, Inc. ("UMG"); Interscope Records ("Interscope"), Dave Meyers ("Meyers"), RadicalMedia LLC ("RadicalMedia"), Dave Free ("Free"), Freenjoy, Inc. ("Freenjoy"), BUF, Inc. ("BUF"), and John Does 1-8 (collectively, "Defendants"), alleges as follows:

## SUMMARY OF THE ACTION

1.   This lawsuit concerns Defendants' willful, brazen, and extensive unlawful infringement of Plaintiff's exclusive copyright in works of fine art titled *Constellations I*, *Constellations II*, and *Constellations III* (collectively, the "Original Works"), which were created

1

by the Plaintiff, the British-Liberian artist Lina Iris Viktor. That the Artist's beautiful and highly distinctive artwork is being used by Defendants to promote the soundtrack to the latest multi-million-dollar budget Marvel film, *Black Panther* (the "Movie"), is both an egregious violation of federal law and an affront to the Artist, her livelihood, her legacy, and to artists everywhere.

2.      Without the consent of the Artist, and without her knowledge, Defendants infringed upon her rights by creating an entire scene featuring an unauthorized copy of the Original Works in the official music video for Lamar's and SZA's song "All the Stars" (the "Song") for the soundtrack of the Movie (the "Infringing Video").

3.      Below, left, is one of the Original Works, the Artist's *Constellations I*. Below, right, is a still image from the Infringing Video. As set forth more fully below, the scene from the Infringing Video intentionally copies the Original Works and is a blatant attempt to appropriate not only the immediately-identifiable and unique look and feel of the Original Works, but also many of the specific copyrightable elements in the Original Works, including stylized motifs of mythical animals, gilded geometric forms on a black background, and distinctively textured areas and patterns, arrayed in a grid-like arrangement of forms.




4. Defendants' exploitation of the Artist's Original Works is particularly troubling for several reasons.

5. Representatives from the Movie and Marvel's PR firm approached the Artist **twice**—in 2016 and in January 2018—asking the Artist to lend her works of art or create new works of art for the Movie or for promotional events connected to the launch of the Movie. No agreement was reached, and the Artist refused permission for her works of art to be used in connection with the project in any way.

6. The Infringing Video and the Movie promotes (and profits from) themes of black and female empowerment and the end of racist and gender exploitation, themes particularly topical in the current environment. Yet, in a bitter irony, the Defendants have ignored the wishes of the Artist, herself a Black African woman, whose life's work is founded on an examination of the political and historical preconceptions of "blackness," liberation and womanhood.

7. In contrast to his message in the song's lyrics that "I hate people that feel entitled," and that "I want my credit if I am winning or I am losing," Defendant Lamar, who is the public face of the Infringing Video and is quick to take credit for it in public statements, has sought to distance himself from any responsibility for the video as an infringement of Plaintiff's rights.

8. The artwork in the scene in the Infringing Video is so clearly a copy of the Artist's work that even before the infringement became known, friends of the Artist were expressing their surprise at her "participation" in the Infringing Video, and the press and social media commentators were commenting on the "collaboration."

9. The Artist is a serious professional, addressing serious themes. Her work hangs in museums and her career depends upon the respect and admiration of dealers, collectors and

critics of contemporary art. By the forced and unauthorized association of her work with the Infringing Video and the Movie, the integrity of her work and her reputation as an artist has been damaged.

10. Accordingly, as set forth more fully below, the Artist seeks damages and equitable relief for direct, contributory and vicarious copyright infringement, arising from the creation and unlawful use of a substantially similar copy of her Original Works in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq.* (the "Copyright Act").

## PARTIES, JURISDICTION AND VENUE

11. Plaintiff Lina Iris Viktor is a United States citizen with a residence, art studio and private exhibition space in New York City. Her work has been exhibited in New York and internationally in commercial galleries and non-profit institutions.

12. Upon information and belief, Defendant Kendrick Lamar Duckworth ("Lamar") is an individual resident in California who regularly conducts business in the State of New York, including numerous concerts, tours, pop-up events, and New York exclusive merchandise sales.

13. Upon information and belief, Defendant Solána Imani Rowe a/k/a SZA is an individual resident in New Jersey, who regularly conducts business in the State of New York, including numerous concerts, tours, pop-up events, and New York exclusive merchandise sales

14. Upon information and belief, Defendant Top Dawg Entertainment LLC ("TDE") is a Delaware corporation with its principal place of business at 335 E Albertoni Street #200-649, Carson, California, and which has both continuous and systematic contacts with the State of New York.

15. Upon information and belief, Defendant Interscope Records ("Interscope") is a California general partnership with its principal place of business at 2220 Colorado Avenue, Santa Monica, California, and is duly qualified to transact business in the State of New York.

16. Upon information and belief, Defendant Universal Music Group Recordings, Inc., a/k/a UMG Recordings Inc. ("UMG"), is a California corporation with its principal place of business at 2220 Colorado Avenue, Santa Monica, California, and is duly qualified to transact business in the State of New York.

17. Upon information and belief, Defendant RadicalMedia LLC ("Radical") is a New York corporation with its principal place of business at 435 Hudson Street 6th Floor, New York, New York 10014.

18. Upon information and belief, Defendant Dave Meyers ("Meyers") is an individual who has both continuous and systematic contacts with the State of New York.

19. Upon information and belief, Defendant Dave Free ("Free") is an individual who has both continuous and systematic contacts with the State of New York.

20. Upon information and belief, Defendant Freenjoy, Inc. ("Freenjoy") is a California corporation with its principal place of business at 7257 ¼ Melrose Ave., Los Angeles, CA 90046, and is duly qualified to transact business in the State of New York.

21. Upon information and belief, Defendant Buf, Inc.("Buf,") is a California corporation with a principal place of business at 7720 West Sunset Blvd, Los Angeles, CA 90046, and is duly qualified to transact business in the State of New York.

22. Upon information and belief, Defendants John Does are one or more individuals or entities who participated in, facilitated, encouraged, and/or had supervisory authority over, the infringement set forth herein and are therefore wholly or partially liable therefor.

23. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 501 (copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

24. This Court has personal jurisdiction over the Defendants because each Defendant regularly transacts or solicits business in New York, has committed a tortious act in New York, or has committed a tortious act that has caused damage to the Plaintiff in this state.

25. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1391(a)-(b) and 28 U.S.C. § 1400(a).

**The Artist and the Original Works**

26. The Artist was born of Liberian parents, is a United States citizen and lives and works in New York and London.

27. The Artist's work consists of paintings, works on paper, sculpture, photography, performance art, and installations. Her work is critically acclaimed, having been featured in *The Art of Jazz: Form / Performance / Notes* (2017, Harvard University Press), exhibited at major galleries, institutions and fairs in New York, London, Johannesburg, Miami, Boston, and Atlanta, and included in permanent institutional collections, including the Smithsonian's National Museum of African Art in Washington, D.C. This year, her work will be displayed at Manifesta 12, a prestigious art biennial occurring in Italy, and major solo shows dedicated to Ms. Viktor's work are planned for The New York Armory Show in March 2018 and for the New Orleans Museum of Art in the Fall of 2018.

28. The Original Works were created by the Artist in 2016, and form part of an ongoing series of related artwork. Each is a work measuring 60 x 84 inches, executed in pure

24K gold, acrylic, gouache and print on canvas. *Constellations II* and *Constellations III* are below, left and right, respectively.

 

29.     The Original Works were being prepared, along with other works by the Artist, for an important exhibition of the Artist's works at The Armory Show to take place in March 2018, which itself is a continuation of a solo exhibition that took place in London from September through October 2017, entitled "Black Exodus: Act I – Materia Prima."

30.     According to the website of her dealer, Mariane Ibrahim Gallery, the Artist's work "explores the hidden links between apparently disparate planes of discourse and endeavor; ancient knowledge systems and cutting-edge science; history and myth." Her art refers to the spiritual quality in traditional African motifs, while transforming them into highly original works of art, and the Artist further describes her work as creating "immersive environments that transport the viewer into other worlds."

31. All of the Original Works have been continuously featured and illustrated on the Artist's webpage at www.linaviktor.com since at least September 2016 (with *Constellations I* and *II* first posted in June 2016), and via the Artist's Instagram account, @linairisviktor (with posts of details of works from the *Constellations* series dating back to April 2016).

32. From April through July of 2016, two of the Original Works were displayed in Boston, Massachusetts at the Ethelbert Cooper Gallery of African and African American Art at Harvard University's Hutchins Center.

33. From September through December of 2016, all three Original Works were displayed in Atlanta, Georgia, at the Spelman College Museum of Fine Art's 20th anniversary exhibition entitled "Africa Forecast: Fashioning Contemporary Life."

34. From July through August of 2017, *Constellations II* was displayed at Magnan Metz Gallery in New York, in an exhibition entitled "Lines, Motion and Ritual."

35. In September 2017, *Constellations II* and *III* were presented by the Mariane Ibrahim Gallery at ExpoChicago, an international art fair.

36. During and as a result of the above-referenced exhibitions, the Original Works were widely covered and praised in the US and foreign press.

37. On February 10, 2018, copyright registrations were issued by the U.S. Copyright Office for *Constellations I* (VA 2-088-035), *Constellations II* (VA 2-088-037) and *Constellations III* (VA 2-088-034).  *See* Exhibit A hereto.

38. The Original Works are original works of authorship, fixed in a tangible medium of expression, containing substantial amounts of the Artist's original creativity, and are therefore copyrightable works under the Copyright Act.

**Background of the Infringing Video**

39.     On November 7, 2016, the Artist received an email in New York from an assistant with Kimoyo Productions who stated that he was "with the art department of the film *Motherland*, a Marvel Studios project" and that they were interested in borrowing *Constellations I* on one of the sets for the film. *Motherland* was the working title for the movie *Black Panther*. The Artist was prepared to consider participating in the project, but the financial and artistic terms offered for her collaboration were not acceptable to her, and, following a telephone conversation with set decorator Jay Hart, Marvel terminated further discussions.

40.     On December 8, 2017, the Artist was contacted with respect to the Movie by a senior account manager at the public relations firm DDA in London, on behalf of Marvel and Disney. The manager stated that she was a big fan of the Artist's work and that DDA was seeking a number of artists to create work inspired by Black Panther for use in promoting the Movie, for display at the Movie launch party to post on Movie social channels. Ms. Ibrahim-Abdi Lenhardt, Ms. Viktor's art representative and owner of Mariane Ibrahim Gallery, handled the negotiations, but DDA insisted that Ms. Viktor enter into an exclusive license for the proposed artworks, thereby forgoing all artistic control—terms that Ms. Viktor was unwilling to accept.

41.     On February 6, 2018, the Infringing Video was released, eliciting overwhelming public notice and comment. The Infringing Video was played more than nine million times on YouTube in the first four days alone. It was played more that fifteen million times on YouTube in the first week.

42.     The Infringing Video features Lamar and SZA singing the Song. The Infringing Video is 3 minutes 54 seconds long, and consists of a number of distinct scenes featuring

different settings, costumes, and lighting.  The Infringing Video is available at https://www.youtube.com/watch?v=JQbjS0_ZfJ0.

43. The Infringing Video promotes the recording artists, their record label TDE, the Song itself, and the Soundtrack album on which the Song is included, and the Movie for which the Soundtrack was created.

44. The Infringing Video was directed by Meyers and credited to him individually as well as to "The Little Homies," a creative partnership between Free and Lamar.

45. Meyers is the principal of his production company RadicalMedia, and Free is the President of TDE.

46. Lamar is a performing artist represented by TDE, but has also been publicly described as a "co-director" of videos for which The Little Homies are credited.

47. The Soundtrack album, on which the Song is included and for which the Infringing Video was created as a promotional tool, is released by Interscope, which is a subsidiary of UMG. According to *Rolling Stone*, the Soundtrack album sold 154,000 copies in its first week of release.

48. Freenjoy and its President Nathan Scherrer are credited as the executive producer of the Infringing Video.

49. BUF is credited as the visual effects company for the Infringing Video.

50. John Does 1-8 are entities or individual principals, employees, and/or consultants of Freenjoy, BUF, and/or other corporate Defendants who were responsible for the production, direction, design, and/or distribution of the Infringing Video, including without limitation the procurement of source material or "inspiration" therefor, and/or have received a direct or indirect financial benefit from the same.

51. On information and belief, Meyers and Free, as individuals and principals of their respective companies, had actual or constructive knowledge of the infringing activities complained of herein, participated materially in said activities, had the right and ability to control said activities, and stood to realize, have realized and continue to realize, a direct and indirect financial benefit therefrom.

52. On information and belief, Lamar and SZA, as individuals and principals of their respected companies, had actual or constructive knowledge of the infringing activities complained of herein, participated materially in said activities, had the right and ability to control said activities, and stood to realize, have realized and continue to realize, a direct and indirect financial benefit therefrom.

53. On information and belief, Freenjoy, BUF, Interscope and UMG had actual or constructive knowledge of the infringing activities complained of herein, participated materially in said activities, had the right and ability to control said activities, and stood to realize, have realized and continue to realize, a direct and indirect financial benefit therefrom.

54. The Artist was alerted to the misuse of the Original Works in the video by acquaintances who were surprised to see what they assumed to be her willing participation.

55. The Artist through her counsel promptly contacted Defendants to object strongly to the unauthorized copying and display of her Original Works.

**Unauthorized Copying of the Original Works in the Infringing Video**

56. Starting at around the 2:59 mark, a segment approximately 19 seconds long prominently features a digital set through which Lamar and others move. That set is a blatant copy of the look and feel of the Original Works, and it copies exactly or in close approximation a large number of the specific copyrightable elements in the Original Works.

57. For example, at left below is the entirety of the Artist's *Constellations II*, and at right below is a detail from a part of the Infringing Video, showing the striking similarity between color, the choice of motifs, and the close-format relationship of the motifs to each other in a grid-like pattern.

 

58. Below are a series of images which compare excerpts from the Artist's Original Works, left, to images excerpted from the Infringing Video, right. The Infringing Video directly copies many elements from the Original Works, including but not limited to the exact patterns and shapes used by the Artist, the varying thickness of their lines, even down to specific imperfections in the patterns and shapes resulting from the Artist's creation by hand of the Original Works.

a. At left, a detail from the Artist's *Constellations III*; at right, a detail from the Infringing Video (both rotated):



b. At left and center, details from the Artist's *Constellations III*; at right, a detail from the Infringing Video (flipped):



c. At left and center, details from the Artist's *Constellations III*, *I*, and *II*, respectively; at far right, a detail from the Infringing Video (rotated):



13

d. At left and center, details from the Artist's *Constellations II* and *III*, respectively; at right, a detail from the Infringing Video:



e. At left, a detail from the Artist's *Constellations III* (rotated); at right, a detail from the Infringing Video (both rotated):



f. At left, a detail from the Artist's *Constellations III*; at right, a detail from the Infringing Video (rotated):



      g. At left, a detail from the Artist's *Constellations III*; at right, a detail from the Infringing Video (rotated):



59. On February 10, 2018, counsel for the Artist put Defendants on written notice of the infringement by the Infringing Video. On February 11, 2018, *The New York Times* published online (and in print form on February 13, 2018) a detailed article on the infringement, which was picked up by numerous news outlets and blogs.

60. According to Billboard.com, the Song was ranked in the week immediately prior to release of the Infringing Video as the 54th most popular song. In the week immediately following the release of the Infringing Video, the Song was ranked as the 31st most popular song.

61. The Artist has suffered, and continues to suffer, from the infringing activities of the Defendants, including without limitation from Defendants' usurping of the Artist's right to control the publication and commercial use of the Original Works, Defendants' failure to pay any license fees commensurate with the value of their commercial and promotional use of the Original Works and/or its unauthorized copies, Defendants' failure to account for or disgorge the profits directly and indirectly attributable to their misconduct, and Defendants' failure to mitigate damages by withdrawing the Infringing Video from public view.

62. In addition, Defendants' actions have caused significant harm to the Artist and the Original Work, thereby significantly damaging the value of the Original Works, all of the Artist's other works, and the value of any licenses for her artworks in the relevant markets.

**CLAIMS FOR RELIEF**
**Count I—Copyright Infringement**
**Against Defendants**

63. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. The acts of the Defendants constitute infringements of the Artist's copyright and exclusive rights under copyright in the Original Works in violation of the Copyright Act, 17 U.S.C. § 106.

65. Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to the Artist's rights.

66. The infringement of the Artist's rights in each of the Original Works constitutes a separate and distinct act of infringement.

67. As a direct and proximate result of Defendants' foregoing acts, the Artist is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

68. Unless and until the Defendants' ongoing conduct with respect to the Infringing Video is enjoined by this Court, such conduct will continue to cause irreparable injury to the Artist's legacy and the integrity of the Original Works that cannot fully be compensated for or measured in money, and the Artist is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

### Count II—Vicarious Copyright Infringement
### Against Defendants

69. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

70. The acts of the Defendants constitute vicarious infringements of the Artist's copyright and exclusive rights under copyright in the Original Works in violation of the Copyright Act, 17 U.S.C. § 106.

71. Upon information and belief, the foregoing acts of vicarious infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to the Artist's rights.

72. The infringement of the Artist's rights in each of the Original Works constitutes a separate and distinct act of infringement.

73. As a direct and proximate result of Defendants' foregoing acts, the Artist is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

74. Unless and until the Defendants' ongoing conduct with respect to the Infringing Video is enjoined by this Court, such conduct will continue to cause irreparable injury to the Artist's legacy and the integrity of the Original Works that cannot fully be compensated for or measured in money, and the Artist is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

### Count III—Contributory Copyright Infringement
### Against Defendants

75. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 62 of this First Amended Complaint as if fully set forth herein.

76. The acts of the Defendants constitute contributory infringements of the Artist's copyright and exclusive rights under copyright in the Original Works in violation of the Copyright Act, 17 U.S.C. § 106.

77. Upon information and belief, the foregoing acts of contributory infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to the Artist's rights.

78. The infringement of the Artist's rights in each of the Original Works constitutes a separate and distinct act of infringement.

79. As a direct and proximate result of Defendants' foregoing acts, the Artist is entitled to actual damages and disgorgement of the Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504.

80. Unless and until the Defendants' ongoing conduct with respect to the Infringing Video is enjoined by this Court, such conduct will continue to cause irreparable injury to the Artist's legacy and the integrity of the Original Works that cannot fully be compensated for or measured in money, and the Artist is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502, prohibiting further infringement of her exclusive rights under copyright.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants' creation of an unauthorized copy of the Original Works of Plaintiff, unauthorized duplication, public display, distribution, and sale of the Infringing Video, infringes the Artist's copyright in the Original Works, in violation of the Copyright Act;

B. Granting a permanent injunction prohibiting Defendants from further infringement of the Artist's copyrights, including further airing of, or making

    available to the public, the Infringing Video, and further production or transfer of the Infringing Video or any infringing images of the Original Works, including but not limited to promotional materials;

C.    Awarding the Artist the actual damages she has suffered in connection with damage to the Artist's reputation and the market for the Artist's works, including the Original Works, and the profits directly and indirectly attributable to the Defendants from the infringement in the Infringing Video;

D.    Awarding such other and further relief as this Court deems just and proper.

### JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated:   New York, New York
           2018-February-20

**CAHILL COSSU NOH & ROBINSON LLP**

      */s/ Christopher J. Robinson*
Christopher J. Robinson
Megan E. Noh
John R. Cahill
Paul S. Cossu
70 West 40th Street
New York, New York 10018
(212) 719-4400

*Attorneys for Plaintiff Lina Iris Viktor a/k/a Natasha Elena Cooper*